```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF GEORGIA
                     ATHENS DIVISION
```

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| Plaintiff, | * |
| vs. | *   CASE NO. 3:07-CV-25(CDL) |
| MARION SHERRILL, DORTHEA SHERRILL, and RANDOLPH SEGAL, | * |
| | * |
| Defendants. | * |

O R D E R

Plaintiff United States of America filed this action against Defendants Marion Sherrill, Dorthea Sherrill, and Randolph ("Randy") Segal to set aside fraudulent transfers pursuant to the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. § 3001, *et seq*. Presently pending before the Court is Plaintiff's Motion for Summary Judgment (Doc. 27). For the following reasons, the Court denies Plaintiff's motion.

FACTUAL BACKGROUND

Construed in the light most favorable to Defendants, the relevant facts are as follows. Defendant Marion Sherrill ("Marion") was a registered representative of J.P. Turner & Company, a broker-dealer which was registered with the United States Securities and Exchange Commission ("SEC"). (SOF ¶ 2; *see* Hardon Decl. ¶ 3, May 27, 2008.) In January 2005, Caneka Webb Hardon, a Staff Accountant in the Atlanta, Georgia Regional Office ("ARO") of the SEC, received a

1

complaint from one of Marion's customers regarding possible violations of federal securities regulations. (SOF ¶ 1; *see* Hardon Decl. ¶ 3.) After receiving the customer complaint, Hardon reviewed the public records, which revealed that Marion was a recidivist subject to two prior SEC actions.[1] (SOF ¶ 3; *see* Hardon Decl. ¶ 4.)

On January 26, 2005, in order to further investigate the customer complaint, Hardon and Howard Dennis, Jr., an ARO Assistant Regional Director, met and interviewed Marion about the possible misappropriation of client funds. (SOF ¶ 5; *see* Hardon Decl. ¶ 6.) Based on the investigation of Marion, along with the discovered SEC violations, the SEC filed a civil action against Marion on February 9, 2005. (SOF ¶ 7.) On May 26, 2006, a final judgment was entered which found Marion liable for disgorgement in the amount of $423,513. (*Id.* ¶ 8.) On August 2, 2005, a criminal indictment in *United States v. Marion Sherrill* was filed in the Northern District of Georgia. (*Id.* ¶ 9.) The indictment charged Marion with mail fraud, securities fraud, and obstruction of justice. (*Id.* ¶ 10.) On March 31, 2006, Marion pled guilty to obstruction of justice and, on June 6, 2006, was sentenced to fourteen months imprisonment and was ordered to pay restitution in the amount of $393,955.75. (*Id.* ¶¶ 11-12; *see* Harris

---

[1] First, Marion aided and abetted a broker-dealer's violations of net capital in August 1995 and was consequently suspended for four months from associating with any broker or dealer. (SOF ¶ 4; *see* Hardon Decl. ¶ 4.) Second, Marion, while a registered principal of a broker-dealer, negotiated an agreement in November 2003 whereby an issuer of securities paid Marion's broker-dealership compensation for recommending the purchase of the issuer's securities. (SOF ¶ 4; *see* Hardon Decl. ¶ 4.)

Decl. ¶ 3, Oct. 23, 2008.)  As of October 15, 2008, Marion's outstanding criminal debt is $435,102.73.  (SOF ¶ 13; *see* Harris Decl. ¶ 4.)

On or before January 26, 2005, Marion and his wife, Defendant Dorthea Sherrill ("Dorthea"), jointly owned property located at 410 Stock Gap Road, Monroe, Georgia 30656 ("Stock Gap").  They both lived in the home located on that property and were jointly liable on the mortgage for the property.[2]  (SOF ¶ 14; *see* Ex. 4 to M. Sherrill Dep.) On January 27, 2005, one day after Hardon and Dennis interviewed Marion about potential SEC federal regulations violations, a quitclaim deed was filed conveying all of Marion's title and interest in the Stock Gap property to his wife.  (SOF ¶ 16; *see* Ex. 9 to M. Sherrill Dep.)  The quitclaim deed, drafted by attorney Stephen Noel, indicated that the property conveyance was a Deed of Gift; specifically, the property was transferred "in consideration of Ten Dollars ($10.00), love and affection and other good and valuable consideration[.]"  (Ex. 9 to M. Sherrill Dep.)  Marion did not recall whether he told his wife on January 26, 2005 that he had signed the quitclaim deed and transferred the property to her.  (SOF ¶ 19; *see* M. Sherrill Dep. 72: 8-19, Aug. 12, 2008.)

On February 5, 2005, Marion executed a quitclaim deed which transferred all of his title and interest in property located at 425

---

[2]For the duration of the Sherrills' marriage, Marion was the sole wage-earner.  (SOF ¶ 36.)  It is undisputed that Dorthea did not contribute regular income to the household.  (*Id.*)

3

Tanners Bridge Road, Monroe, Georgia to his wife.[3]  (SOF ¶ 22; *see* Ex. 18 to M. Sherrill Dep.)  This transfer was recorded as a Deed of Gift; specifically, the property was transferred "in consideration of Ten Dollars ($10.00), love and affection and other good and valuable consideration[.]" (Ex. 18 to M. Sherrill Dep.)  No money was transferred.  (SOF ¶ 24; *see* M. Sherrill Dep. 95:8-10.)  The Sherrills stated in their depositions that Marion's conveyances of the subject properties were a part of an estate planning package that their attorney had prepared for them.  (*See, e.g.*, M. Sherrill Dep. 96:22-25; D. Sherrill Dep. 22:6-10, Aug. 12, 2008; *see also* Noel Aff. ¶ 4, Nov. 24, 2008.)[4]  Marion was insolvent not only before but also after he conveyed the subject properties to his wife.  (SOF ¶ 25(a)[5]; *see* M. Sherrill Dep. 36:19-38:6.)[6]

---

[3]The Sherrills had jointly purchased the Tanners Bridge Road property on August 18, 1998.  (SOF ¶ 20; *see* Ex. 12 to M. Sherrill Dep.)

[4]Although the Sherrills admit that the deed is dated February 5, 2005, they contend that this was made in error because the deed was actually recorded on February 4, 2005.  (*See* Sherrill Defs.' Resps. to Pl.'s Statement of Material Facts [hereinafter Sherrill Defs.' Resps.] ¶ 22.)  The Court finds this fact immaterial for purposes of the pending motion.

[5]The Court notes that Plaintiff's SOF contains two paragraphs 25. (*See* SOF at 5.)  For the purposes of this Order, the Court will refer to these paragraphs as paragraph 25(a) and paragraph 25(b), respectfully.

[6]Marion admits that he was insolvent before the transfers and thus denies that he became insolvent *only* after he transferred the subject properties to his wife.  (Sherrill Defs.' Resps. ¶ 25[a].)  For purposes of this order, the Court finds this *conflict* as to the timing of Marion's insolvency not to be dispositive of the Court's ultimate denial of Plaintiff's motion.

On May 6, 2005, Dorthea transferred her interest in the Tanners Bridge property to her son, Defendant Randy Segal. (SOF ¶ 25(b); *see* Ex. 19 to M. Sherrill Dep.) The contract sales price was $275,000. (SOF ¶ 26; *see* Ex. 12a to M. Sherrill Dep.; *see also* D. Sherrill Dep. 48:19-23.) Segal obtained a mortgage for the purchase of the Tanners Bridge property in the amount of $247,500. (SOF ¶ 27; *see* Ex. 11 to Segal Dep.) The difference between the contract price and mortgage price, which totaled $27,500, resulted in an equity gift to Segal. (*See* Exs. 10-11 to Segal Dep.) Marion did not know that Dorthea made an equity gift of $27,500 to Segal in May 2005. (SOF ¶ 30; *see* M. Sherrill Dep. 101:15-20.) Dorthea was insolvent before, and after, she conveyed the Tanners Bridge property to her son.[7] (SOF ¶ 33; *see* D. Sherrill Dep. 12:17-13:5.)

Plaintiff filed the present action to set aside the previously described transactions by Defendants as fraudulent transfers pursuant to the FDCPA. (*See* Compl. ¶ 1.) Plaintiff now contends that it is entitled to summary judgment because the transfers were fraudulent as a matter of law under 28 U.S.C. § 3304. Specifically, Plaintiff asserts that Marion's property transfers were made with the "actual intent to hinder, delay, or defraud" the United States under §

---

[7] Dorthea denies the truth of Plaintiff's paragraph 33 of its SOF, which asserts that she was insolvent only after she transferred the Tanners property to her son. (*See* Sherrill Defs.' Resps. ¶ 33.) Instead, Dorthea asserts that she became insolvent nearly three years before the transfer even occurred. (*Id.*) This is supported by the record. (*See* D. Sherrill Dep. 13:3-5.)

3304(b)(1)(A) and/or that Marion did not receive the "reasonably equivalent value in exchange for the transfer[s]" and that because Marion "intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due," the transfers were likewise fraudulent under § 3304(b)(1)(B). Furthermore, Plaintiff contends that because Marion's transfers of the subject properties to Dorthea were fraudulent, Dorthea's subsequent transfer of the Tanners Bridge property to Segal was also fraudulent. Defendants contend that genuine issues of material fact exist as to whether their actions constituted fraudulent transfers, and therefore, summary judgment should be denied.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When a party moves for summary judgment, it is the movant's burden to show that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The movant is entitled to summary judgment if, after construing the evidence in the light most favorable to the non-moving party and drawing all justifiable inferences in its favor, no genuine issues of material fact remain to be tried. Fed. R. Civ. P. 56(c); *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *accord Anderson*, 477 U.S. at 248.

DISCUSSION

**I.   Fraudulent Transfer under § 3304(b)(1)(A)**

Plaintiff contends that Marion fraudulently transferred the subject properties with the "actual intent to hinder, delay or defraud" the United States.  Section 3304(b)(1)(A) provides, in pertinent part, that

> a transfer[8] made or obligation incurred by a debtor[9] is fraudulent as to a debt[10] to the United States, whether

---

[8]Transfer is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance."  28 U.S.C. § 3301(8).

[9]A debtor, under 28 U.S.C. § 3002(4), is defined as "a person who is liable for a debt or against whom there is a claim for a debt."

[10]A debt is defined, in pertinent part, as either:

(A)   an amount that is owing to the United States on account of a direct loan, or loan insured or guaranteed, by the United States; or
(B)   an amount that is owing to the United States on account of a fee, duty, lease, rent, service, sale of real or personal property, overpayment, fine, assessment, penalty, restitution, damages, interest, tax, bail bond forfeiture, reimbursement, recovery of a cost incurred by the United States, or other source of indebtedness to the United States, but that is not owing under the terms of a contract originally entered into by only persons other

7

>such debt arises before or after the transfer is made or the obligation is incurred, if the debtor makes the transfer or incurs the obligation with actual intent to hinder, delay, or defraud a creditor[.]

"[B]ecause of the difficulty of providing direct proof of fraud," circumstantial evidence can be sufficient to establish an intent to defraud. 37 Am. Jur. 2d <u>Fraudulent Conveyances and Transfers</u> § 202 (2008). Therefore, in determining whether actual intent exists in this case, the Court may consider, among other factors, whether:

>(A) the transfer or obligation was to an insider;
>(B) the debtor retained possession or control of the property transferred after the transfer;
>(C) the transfer or obligation was disclosed or concealed;
>(D) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>(E) the transfer was of substantially all the debtor's assets;
>(F) the debtor absconded;
>(G) the debtor removed or concealed assets;
>(H) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>(I) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
>(J) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
>(K) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

28 U.S.C. § 3304(b)(2). Although § 3304(b)(2) permits the Court to consider other factors, it does not require the Court to do so. *Fed. Trade Comm'n v. Nat'l Bus. Consultants, Inc.*, 376 F.3d 317, 321 n.7

---

>than the United States[.]

28 U.S.C. § 3002(3).

(5th Cir. 2004). Having reviewed the present record, the Court acknowledges that some of the relevant factors support a conclusion by the fact finder that the transactions were fraudulent. However, the Court also finds that a reasonable fact finder could conclude otherwise. Therefore, since genuine issues of material fact exist to be tried, summary judgment is not appropriate.

**II.   Fraudulent Transfer under § 3304(b)(1)(B)**

Plaintiff also contends that Marion's conveyances were fraudulent under § 3304(b)(1)(B). Section 3304(b)(1)(B)(ii) provides, in pertinent part, that

> a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States, whether such debt arises before or after the transfer is made or the obligation is incurred, if the debtor makes the transfer or incurs the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation if the debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

Not only does Plaintiff contend that Marion made the transfers without receiving a "reasonably equivalent value" in exchange, but Plaintiff also contends that Marion reasonably should have believed that he would have incurred a debt beyond his ability to pay. The Court finds that genuine issues of material fact exist as to Plaintiff's § 3304(b)(1)(B) claim. Therefore, summary judgment is not appropriate.

9

CONCLUSION

As discussed above, the Court finds that genuine issues of material fact exist to be tried as to whether Defendants' conveyances were fraudulent under either § 3304(b)(1)(A) or § 3304(b)(1)(B). Accordingly, the Court denies Plaintiff's Motion for Summary Judgment (Doc. 27) as to all Defendants.

IT IS SO ORDERED, this 12th day of January, 2009.

                                                        S/Clay D. Land  
                                                             CLAY D. LAND  
                                              UNITED STATES DISTRICT JUDGE